

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA
# CENTRAL DIVISION

**FILED**

JUN 2 9 2017

CLERK

KIRSTEN HUNTER as Guardian ad
Litem of her Minor Child,

A.Q., and on her own behalf,

          Plaintiffs,

vs.

SOUTH DAKOTA DEPT. OF SOCIAL
SERVICES, LYNN VALENTI in her
personal and official capacity,
VIRGENA WEISELER in her personal
and official capacity, MATT
OPBROECK in his personal and official
capacity, KATIE ROCHELLE, in her
personal and official capacity, TERESA
CASS in her personal and official
capacity, DOE DEFENDANTS 1-4, and
Avera St. Mary's Hospital,

          Defendants.

Case No.: 17-3016

**COMPLAINT AND**

**DEMAND FOR JURY TRIAL**

1

## I. INTRODUCTION

1. Kirsten Hunter as guardian ad litem of her minor child and on her own behalf brings this action because of the unconstitutional forced catheterization of her three-year-old son by Avera St. Mary's (ASM) on the order and direction of the South Dakota Department of Social Services (DSS) employees. This lawsuit challenges the conduct of the Defendants: catheterizing children whom it suspects are victims of child abuse, in violation of their rights under the Fourth Amendment, the Fifth Amendment, and the Due Process Clause of the Fourteenth Amendment.

2. Hunter's family was investigated by DSS after her boyfriend was arrested for a probation violation. DSS ordered that she and her children produce urine samples for drug testing as part of the investigation.

3. An appointment with ASM was ordered and scheduled by DSS to test Ms. Hunter and her children for drugs.

4. When Ms. Hunter went to ASM for the appointment, Ms. Hunter's three-year-old son, A.Q., was held down and catheterized because he was not toilet-trained and could not produce a sample in a cup.

5. DSS did not seek a warrant for this intrusion; instead, it threatened Ms. Hunter with the removal of her children in order to coerce her into agreeing to take her children to ASM to be drug-tested.

2

6.      When she involuntarily consented to drug-testing, Ms. Hunter had no idea that her son would be catheterized.

7.      A.Q. suffered physical and emotional pain during and after he was catheterized. Rather than protecting him from abuse, he was traumatized by the actions of DSS and ASM. A.Q. screamed during the forcible catheterization and complained of pain and discomfort for several days after. He developed a staph infection as a result of the catheterization.

8.      There was no medical purpose for the test and the procedure was performed in a humiliating and medically unacceptable manner. At the time, Ms. Hunter was not told of the risks of the test or given information about any alternatives to catheterization.

9.      The test was done solely to develop evidence for a case of child abuse or neglect against Ms. Hunter and her live-in boyfriend.

10.     There were no drugs in A.Q.'s urine.

11.     This case raises an important constitutional claim because it is well-established that compelling blood, breath, or bodily fluids constitutes a "search" within the meaning of the Fourth Amendment. *McNeely v. Missouri*, 133 S. Ct. 1552 (2013) (holding that a warrant is required for blood draw). The Supreme Court recently noted that it "has never retreated, however, from our recognition that any compelled intrusion into the human body implicates significant,

3

constitutionally protected privacy interests." *Id*. at 1565. Given that blood draws are considered so intrusive that the Supreme Court demands that police seek a warrant, surely the government should be restrained from catheterizing innocent children given the significant privacy interests raised by this practice.

12.   The catheterization of a three-year-old child can never be condoned or deemed constitutional. Individuals, including children, are "entitled to be free from unreasonable governmental intrusion." *Terry v. Ohio*, 392 U.S. 1 (1968).

13.   The search of A.Q. violated the Fourth Amendment, the Fifth Amendment, and the Due Process Clause of the Fourteenth Amendment because it was unreasonable, it shocks the conscience, it was unnecessary both medically and practically, and it was not reviewed by a judge.

## II.   PARTIES

### A. PLAINTIFFS

14.   Plaintiff Kirsten Hunter on behalf of herself and as guardian ad litem of her minor son A.Q., is a resident of Pierre, South Dakota.

15.   She is the primary caregiver of A.Q. and has legal and physical custody of him.

16.   A.Q. is three years old.

17.   He resides in Pierre with his mother and his five year old sister.

4

**B. DEFENDANTS**

18.     Department of Social Services (DSS) is the state agency that investigates allegations of child neglect and abuse through its Child Protection Services (CPS) division.

19.     Defendant Lynn Valenti is the Secretary of the South Dakota Department of Social Services (DSS). In that capacity, she is in charge of the day-to-day operation of DSS, including Child Protection Services (CPS). She is sued in her official and personal capacity.

20.     Defendant Virgena Weiseler is the Division Director of the DSS Division of Child Protective Services.  She is sued in her official and personal capacity.

21.     Defendant Avera St. Mary's is a non-profit hospital in Pierre, South Dakota where A.Q. was forcibly catheterized.

22.      Avera St. Mary's (ASM) is part of the regional, integrated Avera Health system which manages approximately 33 hospitals throughout the region.

23.     Defendant Matt Opbroeck is sued in his official and personal capacity. He is a social worker and case manager of A.Q.'s case for the South Dakota Department of Social Services.

24.     Doe Defendants 1-4 are sued in their personal capacities as medical employees of Avera St. Mary's who participated in the catheterization of A.Q. On information and belief, Doe Defendants 1-4 were present when A.Q. went to Avera St. Mary's with his mother.

25.     Defendant Katie Rochelle is a registered nurse at ASM and is listed on A.Q.'s medical records as the author of the February 24, 2017 notes regarding his catheterization requested by DSS's Child Protective Services.

26.     Defendant Teresa Cass is a nurse practitioner at ASM and is listed on the February 24, 2017 bill for A.Q.'s medical services as the provider. She is sued in her personal and official capacity.

## III.   JURISDICTION

27.     This is an action brought against a state agency and a private hospital working as an agent of the state. It is brought pursuant to 42 U.S.C. § 1983, the United States Constitution and state statutory and common law.

28.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this District pursuant to the general venue provision, 29 U.S.C. § 1391. All parties reside and the Plaintiffs' claims arose within the district.

6

## IV.  FACTS

29.    On Thursday, February 23, 2017, the adult male residing with Plaintiff Kirsten Hunter and her two children was arrested for a probation violation because his urine tested positive for illegal drugs.  As a result of the arrest, the police came to the house the Plaintiffs shared with him to search.

30.    Case worker Matt Opbroeck led the DSS investigation of Ms. Hunter.

31.    Mr. Opbroeck informed Ms. Hunter that she and her children had to submit to drug tests and that if she failed to submit to having herself and her children tested, the children would be immediately removed from her home and her custody.

32.    Because she felt that she did not have a choice and she risked losing custody of her children, she agreed to have her children tested.

33.    DSS did not seek nor did it have a warrant to search the children.

34.    DSS through Opbroeck directed Ms. Hunter to contact ASM and instructed ASM to conduct a drug screen on Friday, February 24, 2017.

35.    When Ms. Hunter arrived for her appointment at ASM on February 24, 2017, she was met by employees of ASM.

36.    On information and belief, Ms. Hunter was met by Doe Defendants 1-4 and Defendant Cass and/or Defendant Rochelle and told that she and her children needed to urinate in cups on orders of DSS.

7

37.     At the time, A.Q., was not toilet-trained and could not produce a sample in a cup.

38.     Even though other methods, such as placing a bag over his penis, would have yielded a urine sample, Defendant Cass and Doe Defendants 1-4 immediately began to hold him down and to catheterize him.

39.     At the time, Defendant Cass and Doe Defendants 1-4 did not inform Ms. Hunter of alternative methods of getting a urine sample or explain the risks associated with catheterizing a child.

40.     Ms. Hunter did not know that she could object nor was she given any opportunity to object.

41.     Ms. Hunter did not speak with or see a doctor.

42.     A.Q. was catheterized and screamed during the entire procedure.

43.     On information and belief, A.Q. was catheterized with an adult-sized catheter.

44.     Ms. Hunter was humiliated and upset about A.Q.'s catheterization.

45.     A.Q. was injured physically and emotionally and, after two days of pain and discomfort in his penis and constipation, Ms. Hunter brought him back to the hospital emergency room on Sunday, February 26, 2017 in Huron, South Dakota. A.Q. was prescribed Tylenol for the pain.

46.    A.Q.'s pain persisted and he was constipated.  As a result, Ms. Hunter brought him back to ASM on February 28, 2017.  At that time, A.Q.'s urine was collected in a bag because he was traumatized by the catheterization and screamed when his pull-up was removed.

47.    Doctors or staff at ASM told her that A.Q. had developed a staph infection in his penis and he was given antibiotics to treat the infection caused by the catheterization.

## V.    CLAIMS

### A.    FIRST CLAIM FOR RELIEF: VIOLATION OF FOURTH AMENDMENT [ALL DEFENDANTS]

48.    Paragraphs one through 47 are incorporated herein by reference, the same as if pled in full.  Defendants' catheterization of A.Q. and their pattern, practice, and customs as alleged in this Complaint violated rights guaranteed to him and his mother by 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, which prohibits unreasonable search and seizure, excessive force, and conduct that shocks the conscience.

49.    It is well-established that compelling a blood, breath or bodily fluids constitutes a "search" within the meaning of the Fourth Amendment. *McNeely v. Missouri*, 133 S. Ct. 1552 (2013).  "[A] strip search is an invasion of personal rights of the first magnitude." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th

9

Cir.1993). "One of the clearest forms of degradation in Western Society is to strip a person of his clothes. The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy." *Hayes v. Harriot*, 70 F.3d 1144 (10th Cir. 1995) (citing *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) (quoting 3 Privacy Law and Practice p 25.02 George B. Trubow ed., (1991)). Individuals, including children, are "entitled to be free from unreasonable governmental intrusion." *Terry v. Ohio*, 392 U.S. 1 (1963).

50. The search of A.Q. violates the Fourth Amendment because it was unreasonable and because it was not authorized by a judge.

### B.   SECOND CLAIM FOR RELIEF: VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS CLAUSES [ALL DEFENDANTS]

51. Paragraphs one through 50 are incorporated herein by reference, the same as if pled in full. Defendants' coercion of Ms. Hunter's consent to cooperate or lose custody of her children violated rights guaranteed to her and A.Q. by 42 U.S.C. § 1983 and the Due Process Clause of the Fifth Amendment and Fourteenth Amendment, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law." The Supreme Court has held that by virtue of the Due Process Clause "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a

particular suspect, are so offensive to a civilized system of justice that they

must be condemned." *Colorado v. Connelly*, 479 U.S. 157, 163 (1986).

### C. THIRD CLAIM FOR RELIEF: VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS [ALL DEFENDANTS]

52.     Paragraphs one through 51 are incorporated herein by reference, the

same as if pled in full.  The Defendants' conduct of securing a urine sample

from a toddler by catheterizing him shocks the conscience and violated rights

guaranteed to him and his mother by the Due Process Clause of the Fifth and

Fourteenth Amendments of the Constitution which "prevents the government

from engaging in conduct that shocks the conscience or interferes with rights

implicit in the concept of ordered liberty." *Moran v. Clarke*, 296 F.3d 638, 643

(8th Cir. 2002) citing *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir.1998) (en

banc). The Fourteenth Amendment prohibits "conduct that is so outrageous that

it shocks the conscience or otherwise offends 'judicial notions of fairness, [or

is] offensive to human dignity.'" *Id.*  Plaintiffs were injured by the Defendants'

conduct.

### D. FOURTH CLAIM FOR RELIEF: § 1985 CONSPIRACY TO VIOLATE CIVIL RIGHTS [INDIVIDUAL DSS AND HOSPITAL EMPLOYEES]

53.     Paragraphs one through 52 are incorporated herein by reference, the

same as if pled in full.  Defendants Lynn Valenti, Virgena Weiseler, Matt

11

Opbroeck, Katie Rochelle, Teresa Cass, and Doe Defendants 1-4 have violated rights guaranteed to Ms. Hunter and A.Q. by 42 U.S.C. § 1985 through a conspiracy to deprive A.Q. of his right to be free of unreasonable search and seizure and excessive force without due process. The conspiracy resulted in injury to them.

## VI.  **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

54.    Assume jurisdiction over this matter;

55.    Declare defendants' collective actions and inactions, including the coercion of parents and use of forced catheterization of children a violation of rights guaranteed to the children and their parents by 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Fourth, the Fifth, and Fourteenth Amendments to the United States Constitution;

56.    Award compensatory and general damages, in an amount to be proven at trial, against Avera St. Mary's and against each of the individual defendants sued in his or her personal capacity;

57.    Award Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

58.    Grant any other relief the Court deems necessary and proper.

## VII.  DEMAND FOR JURY TRIAL

59.    The Plaintiffs respectfully request a jury trial.

Dated: June 29, 2017

/s/ Courtney A. Bowie
Courtney A. Bowie*
American Civil Liberties Union
 of South Dakota
P.O. Box 1170
Sioux Falls, SD 57101
Tel.: 201-284-9500
Fax: 605-332-5648
e-mail: cbowie@aclu.org
*Application for *Pro Hac Vice* Admission
filed herewith

/s/ James D. Leach
James D. Leach
Attorney at Law
1617 Sheridan Lake Rd.
Rapid City, SD 57702
Tel.: (605) 341-4400
Fax: (605) 341-0716
jim@southdakotajustice.com

*Attorneys for Plaintiffs*